IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WENDI KRAEMER and            )
ANGELS JOURNEY              )     CIVIL ACTION NO.      22-1232
HOME RESCUE,                )
a non-profit corporation,   )
                            )
          Plaintiffs,       )
                            )
     v.                     )
                            )
ROSTRAVER TOWNSHIP, a municipal )
corporation, GARY N. BECK, SR., )
in his official and individual capacity, )
FRANK MONACK, in his individual )
and official capacity, NICK LNU, )
in his individual capacity, ALL BUT )
FURGOTTEN, INC, a non-profit )
corporation, ANDREA PALMER, in her )
 individual capacity, LIBBY WILLIAMS, )
in her individual capacity, ERIN CASSIDY, )
in her individual capacity, RENEE )
BARNES, in her individual capacity, and )
TRISH COLE, in her individual capacity, )     JURY TRIAL DEMANDED
                            )
          Defendants.       )     Electronically Filed.

COMPLAINT IN A CIVIL ACTION

COMES NOW, the Plaintiffs, WENDI KRAEMER and ANGELS JOURNEY HOME

RESCUE, by and through their attorneys, LAW OFFICES OF JOEL SANSONE, JOEL S.

SANSONE, ESQUIRE, MASSIMO A. TERZIGNI, ESQUIRE, and ELIZABETH A. TUTTLE,

ESQUIRE, and hereby files this Complaint in a Civil Action as follows:

JURISDICTION AND VENUE

1.      This is an action for the redress of grievances and in vindication of civil rights guaranteed

to the Plaintiffs under the Constitution of the United States and the laws enacted in furtherance

thereof, including 42 U.S.C. § 1983.

2.      This action is brought against the Defendants for violating Plaintiffs' rights under the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

3.      Jurisdiction is founded on 28 U.S.C. § 1331 and § 1343(3).  Supplemental jurisdiction over Plaintiffs' state law claims is also proper pursuant to 28 U.S.C.A. § 1367.

4.      Venue is proper under 28 U.S.C.A. § 1391(b).  All claims set forth herein arose in the Western District of Pennsylvania.

<u>PARTIES</u>

5.      Plaintiff, Wendi Kraemer ("Kraemer"), is an adult individual who resides in Westmoreland County, Pennsylvania.  Plaintiff Kraemer is the owner and Chief Executive Officer ("CEO") of Plaintiff Angels Journey Home Rescue.

6.      Plaintiff, Angels Journey Home Rescue ("Rescue"), is a Pennsylvania non-profit corporation with a registered address of 4531 State Route 51 North, Belle Vernon, Pennsylvania 15012.

7.      Defendant, Rostraver Township ("Township"), is a Pennsylvania municipal corporation with administrative offices located at 201 Municipal Drive, Rostraver Township, Pennsylvania 15012.  At all times relevant to this complaint, Defendant Township acted by and through its officials acting or purporting to act within the full scope and authority of their office.

8.      Defendant, Gary N. Beck, Sr. ("Beck"), is an adult individual and resident of Westmoreland County, Pennsylvania.  At all times relevant to this Complaint, Defendant Beck was a duly elected commissioner of Defendant Township, employed by Defendant Township, purporting to act within the full scope and authority of his office. In his capacity as commissioner, Defendant Beck purported to act as a decision-maker for Defendant Township.

2

9.      Defendant, Frank Monack ("Monack"), is an adult individual and resident of Westmoreland County, Pennsylvania.  At all times relevant to this Complaint, Defendant Monack was the zoning officer for Defendant Township, employed by Defendant Township and purporting to act within the full scope and authority of his office.

10.     Defendant, Nick LNU ("Nick LNU"), is an adult male individual and resident of Westmoreland County, Pennsylvania.

11.     Defendant, Andrea Palmer ("Palmer"), is an adult female individual and resident of Westmoreland County, Pennsylvania.  At all times relevant to this Complaint, Defendant Palmer was employed by Defendant All But Furgotten, Inc., as a humane officer.

12.     Defendant, All But Furgotten, Inc. ("Furgotten"), is a Pennsylvania non-profit corporation with a registered address of 70 Carpenter Lane, Irwin, Pennsylvania 15642.  At all times relevant hereto, Defendant Furgotten was acting through its agents, subsidiaries, officers, employees and assigns acting within the full scope of their agency, office, employment or assignment including, but not limited to, Defendant Palmer.

13.     Defendant, Libby Williams ("Williams"), is an adult female individual and resident of New Jersey.

14.     Defendant, Renee Barnes ("Barnes"), is an adult female individual and resident of Westmoreland County, Pennsylvania.

15.     Defendant, Erin Cassidy ("Cassidy"), is an adult female individual and resident of Westmoreland County, Pennsylvania.

16.     Defendant, Trish Cole ("Cole"), is an adult female individual and resident of Westmoreland County, Pennsylvania.

## FACTUAL ALLEGATIONS

17.     Defendant Beck is a duly elected commissioner for Defendant Township.

18.     In or about 2015, Plaintiff Kraemer purchased the property at 4531 State Route 51, North Belle Vernon, Pennsylvania 15012 as a primary residence and a location for Plaintiff Rescue.

19.     Various members of the community have informed Plaintiff Kraemer that Defendant Beck wanted to purchase the Plaintiffs' property before Plaintiff Kraemer's offer on the property was accepted in 2015.

20.     Plaintiff Rescue works with veterans, including African-American veterans, and provides them with service and therapy dogs.

21.     For several years, Defendant Beck has made various baseless complaints about Plaintiff Kraemer to the local and state police.

22.     By way of example, Defendant Beck regularly makes complaints to local police and to Defendant Township's zoning officer, Defendant Monack, that Plaintiff Kraemer burns boxes and various other items on her property.

23.     Notably, Defendant Township has no burn ordinances and many other members of the community, including Defendant Beck, also regularly burn various items on their properties.

24.     Plaintiff Kraemer has never been cited for burning on her property.  Plaintiff Kraemer's burning is not excessive in any way.

25.     Plaintiff Kraemer has also made various complaints about Defendant Beck to the local and state police.

26.     Plaintiff Kraemer has witnessed various animal abuse offenses committed by Defendant Beck and has reported those offenses to the local police, state police, American Society for the

Prevention of Cruelty to Animals, People for the Ethical Treatment of Animals and other agencies.

27.     By way of example, in or about December of 2021, Plaintiff reported to the state police that Defendant Beck's dogs were housed in an uninsulated structure, outside, in freezing temperatures.  At that time, Plaintiff Kraemer also heard sounds of distress from the dogs.

28.     On several occasions throughout the years, Defendant Township's garbage collection service refused to collect Plaintiffs' trash from their property.

29.     By way of example, from in or about April of 2021 to in or about November of 2021, Plaintiffs' trash was not removed by Defendant Township's garbage collection service.

30.     Defendant Township never provided a valid reason for not removing the Plaintiffs' trash from her property.

31.     Plaintiffs believe, and therefore aver, that Defendant Beck, in his capacity as a commissioner for Defendant Township, instructed Defendant Township's garbage collection service not to remove the Plaintiffs' trash.

32.     Plaintiffs believe, and therefore aver, that Defendant Township and/or Defendant Beck did not instruct garbage collection service to not collect similarly situated property owners' and/or organizations' trash.  No rational basis exists for this difference in treatment.

33.     Plaintiffs believe, and therefore aver, that Defendant Beck, in his capacity as a commissioner for Defendant Township, instructed Defendant Township's garbage collection service not to remove the Plaintiffs' trash in retaliation for Plaintiff Kraemer's complaints about Defendant Beck.

34.     Plaintiffs believe, and therefore aver, that Defendant Beck, in his capacity as a commissioner for Defendant Township, instructed Defendant Township's garbage collection

service not to remove the Plaintiffs' trash in retaliation for Plaintiff Rescue's association with Plaintiff Kraemer.

35.     Plaintiffs believe, and therefore aver, that Defendant Beck, in his capacity as a commissioner for Defendant Township, instructed Defendant Township's garbage collection service not to remove the Plaintiffs' trash because Plaintiff Rescue works with African-American veterans and, as a result, African-American individuals visit the Plaintiffs' property.

36.     On or about July 25, 2021, Plaintiff Rescue had a yard sale on its property to raise money.  At that time, veterans, including African-American veterans, were on the Plaintiffs' property for the yard sale and/or as volunteers.

37.     At that time, Defendant Beck stated, in reference to Plaintiff Kraemer and the African-American veterans, "that bitch better learn her place and get these fucking niggers out of here."

38.     At or around that time, various members of the community informed Plaintiff Kraemer that Defendant Beck was circulating a petition to remove the Plaintiffs from the community.

39.     At that time, Defendant Beck made statements to various members of the community that Plaintiff Kraemer sold drugs and "ran a prostitution ring" at the Plaintiffs' property.

40.     The statements made by Defendant Beck, as more fully described hereinbefore above, were false, defamatory to Plaintiff Kraemer's character and placed Plaintiff Kraemer in a false light to members of her community.

41.     The statements made by Defendant Beck also impute criminal liability to Plaintiff Kraemer.

42.     On January 14, 2022, at or around 3:45 a.m., the front porch of the Plaintiffs' property caught fire.  The fire severely damaged the property and several animals perished.

43.     Shortly after the fire was extinguished, Plaintiff Kraemer witnessed Defendant Nick LNU trespassing in her residence and dumping trash inside the house.

44.     Plaintiffs did not permit Defendant Nick LNU to be on their property at that time.

45.     After the fire, Defendant Monack entered the Plaintiffs' property and Plaintiff Kraemer's residence with Defendant Township's chief of police and other officers.

46.     Plaintiff Kraemer told Defendant Monack that she did not permit Defendant Monack to enter the property and/or her residence at that time.

47.     Defendant Monack, however, entered the Plaintiffs' property and Plaintiff Kraemer's residence without the Plaintiffs' permission.  No circumstances existed to warrant Defendant Monack's unlawful entry onto the property and/or home at that time.

48.     Plaintiff Rescue's volunteers also informed Plaintiff Kraemer that Defendant Beck was located on the Plaintiffs' property and taking pictures after the fire.

49.     Plaintiffs did not permit Defendant Beck to be on the property at that time.

50.     Due to the fire, Plaintiff Rescue's animals needed temporary homes.  Several volunteers housed those animals.

51.     Thereafter, Defendant Palmer contacted several of those individuals, in her capacity as a humane officer for Defendant Forgotten, via text message and instructed those individuals not to return the Plaintiffs' animals.

52.     Defendant Palmer told several individuals that she wanted to "build a case" against Plaintiffs for not properly "vetting" their animals.  However, Plaintiffs properly vet their animals.

53.     At that time, Defendant Palmer said that Plaintiff Kraemer was a "hoarder.

54.     Those statements were, and are, false, defamatory to Plaintiff Kramer's character and character and placed Plaintiff Kraemer in a false light to members of her community.

55.     Defendant Palmer made the above-described statements in her capacity as a humane officer for Defendant Forgotten.

56.     Sometime thereafter, Plaintiff Kraemer overheard Defendant Barnes make statements to an employee at Dollar General that Plaintiff Kraemer was a "hoarder."

57.     Those statements were, and are, false, defamatory to Plaintiff Kraemer's character and placed Plaintiff Kraemer in a false light to members of her community.

58.     Plaintiffs have a business relationship with the fundraising website, Cuddly, which Plaintiffs utilize to raise funds for various expenses.

59.     Following the fire, Plaintiff Kraemer posted a fundraiser for Plaintiff Rescue on Cuddly's website.

60.     Following the fire at the Plaintiffs' property, Defendant Williams' Facebook page, "Rescue Watch," posted a news article about the fire.

61.     At the time of that posting, and thereafter, Plaintiffs believe, and therefore aver, that Defendant Williams was the only individual to post as the Facebook page "Rescue Watch".

62.     Defendant Williams, as "Rescue Watch," Defendant Cole, Defendant Cassidy and other individuals posted multiple negative comments about the Plaintiffs in the comment section of that post.

63.     In the comment section of that post, Defendant Williams, as "Rescue Watch," and/or other individuals, including, but not limited to, Defendant Cole, shared information about the Plaintiffs' page on the fundraising website, Cuddly.

64.     Defendant Williams, as "Rescue Watch," Defendant Cole, and other individuals made negative comments on that post about the Plaintiffs' fundraising page and stated that they were going to contact Cuddly to complain about the Plaintiffs.

65.     Plaintiffs believe, and therefore aver, that Defendants Williams and Cole contacted Cuddly in order to interfere with the Plaintiffs' business relationship with Cuddly.

66.     Defendant Cassidy also made Facebook comments and/or posts using the Facebook account "Erin Ireland" that contained false and defamatory statements about Plaintiff Kraemer including, but not limited to, that Plaintiff Kramer abandoned dogs and that she "left [her dogs] to die."

67.     The statements made by Defendant Cassidy, as more fully described hereinbefore above, were false, defamatory to Plaintiff Kraemer's character and placed Plaintiff Kraemer in a false light to members of her community.

68.     Defendant Cole also made multiple public Facebook posts containing several false and defamatory statements about Plaintiff Kraemer, including, but not limited to, that Plaintiff Kramer was a hoarder and that Plaintiff Rescue was not a legitimate non-profit organization.

69.     The statements made by Defendant Cole, as more fully described hereinbefore above, were false, defamatory to Plaintiff Kraemer's character and placed Plaintiff Kraemer in a false light to members of her community.

70.     Defendant Barnes also made a separate public Facebook post containing several false and defamatory statements about Plaintiff Kraemer, including, but not limited to, that Plaintiff Kraemer was a "hoarder" and that Plaintiff Kraemer that destroyed Defendant Barnes' rental property.

71.     The statements made by Defendant Barnes, as more fully described hereinbefore above, were false, defamatory to Plaintiff Kraemer's character and placed Plaintiff Kraemer in a false light to members of her community.

72.     The statements made by Defendant Barnes imputes criminal liability on Plaintiff Kraemer.

73.     As a direct and proximate result of the negative, false and/or defamatory statements made on various Facebook pages by Defendants Williams, Cassidy Barnes and Cole, as more fully described hereinbefore above, multiple individuals contacted Cuddly to make complaints about the Plaintiffs.  Thereafter, Cuddly removed the Plaintiffs' fundraiser from its website.

74.     As a direct and proximate result of the negative, false and/or defamatory statements made on various Facebook pages by Defendants Williams, Cassidy, Barnes and Cole, as more fully described hereinbefore above, Plaintiffs are no longer permitted by Cuddly to use its fundraising website.

75.     As a result of the fire on the Plaintiffs property, Plaintiffs property was severely damaged and required construction.

76.     Defendant Monack initially told Plaintiff Kraemer that Defendant Township did not require any permits for that construction.

77.     However, sometime thereafter, Defendant Monack informed Plaintiff Kraemer that Defendant Township required a permit and a structural engineer's report for the construction.

78.     Plaintiffs believe, and therefore aver, that similarly situated property owners were not required by Defendant Township to obtain a structural engineer's report for a permit.  No rational basis exists for this difference in treatment.

79.     Plaintiff Kraemer acquired a report by a structural engineer, per Defendant Township's request.

80.     Thereafter, Defendants Township and/or Monack refused to grant the Plaintiffs the required permits for construction for approximately eight (8) months.

81.    Plaintiffs believe, and therefore aver, that Defendants Township and/or Monack have not refused to grant permits to similarly situated properties for eight (8) months.  No rational basis exists for this difference in treatment.

82.    Throughout that time, Defendants Township and/or Monack also informed the Plaintiffs that they were required to have their septic tank inspected prior to receiving any permits.

83.    Plaintiffs believe, and therefore aver, that Defendants Township and/or Monack do not require other similarly situated properties to have their septic tank inspected prior to receiving any permits.  No rational basis exists for this difference in treatment.

84.    In or about August of 2022, Defendants Township and/or Monack finally granted the required building permit to the Plaintiff.  However, that permit included conditions which no other property owners with permits were subjected to, including, but not limited to, inspections at various stages of construction.  No rational basis exists for this difference in treatment.

85.    Plaintiffs believe, and therefore aver, that Defendant Beck, in his capacity as commissioner for Defendant Township, set the above-described permit requirements in retaliation for Plaintiff Kraemer's complaints about Defendant Beck.

86.    Plaintiffs believe, and therefore aver, that Defendant Beck, in his capacity as commissioner for Defendant Township, set the above-described permit requirements in retaliation for Plaintiff Rescue's association with Plaintiff Kraemer.

87.    Plaintiffs believe, and therefore aver, that Defendant Beck, in his capacity as commissioner for Defendant Township, set the above-described permit requirements because Plaintiff Rescue works with African-American veterans and, as a result, African-American individuals visit the Plaintiffs' property.

88.     Defendant Township and/or Defendant Beck have also contacted various construction unions and falsely alleged that the Plaintiffs property was going to be condemned.

89.     As a direct and proximate result of Defendant Township and/or Defendant Beck's false statements about condemning the Plaintiffs property and Defendant Township, Defendant Beck and/or Defendant Monack's refusal to grant the Plaintiffs permits for approximately eight (8) months, Plaintiffs have been unable to secure a contract for construction on their property for approximately eight (8) months.

90.     As a direct and proximate result of the requirements set by Defendant Township, Defendant Monack and/or Defendant Beck, Plaintiff Rescue has been unable to operate.

COUNT I:

PLAINTIFF KRAEMER v. DEFENDANTS TOWNSHIP AND BECK

VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS,
SPECIFICALLY, §1983 AND THE FIRST AMENDMENT
OF THE UNITED STATES CONSTITUTION

RETALIATION – PROTECTED SPEECH

91.     Plaintiffs incorporate by reference Paragraphs 1 through 90 as though fully set forth at length herein.

92.     Plaintiff Kraemer claims damages for the injuries set forth herein under 42 U.S.C. §1983 against the above-captioned Defendants for violation of Plaintiff's constitutional rights under color of law.

93.     At all times relevant hereto, Plaintiff Kraemer had the right to be free from retaliation based on her right to freedom of speech.

94.     As described hereinbefore above, Plaintiff has made multiple complaints about Defendant Beck.

95.     As described hereinbefore above, Defendant Beck has taken various actions against the Plaintiffs, in his capacity as commissioner for Defendant Township, including, but not limited to, instructing Defendant Township's garbage collection service not to collect Plaintiffs' trash and refusing to provide Plaintiffs with proper permits for approximately eight (8) months.

96.     Plaintiffs believe, and therefore aver, that Defendant Beck has taken those actions, in his capacity as commissioner for Defendant Township, in retaliation for Plaintiff Kraemer's complaints about Defendant Beck.

97.     In his capacity as commissioner for Defendant Township, Defendant Beck acts as a decision-maker for Defendant Township.

98.     As a direct and proximate result of the acts described hereinbefore above perpetrated by the Defendants, Plaintiff Kraemer suffered the following injuries and damages:

      a.      Plaintiff's right under the First Amendment to the United States Constitution to be free from retaliation based on her protected speech was violated;

      b.      Plaintiff was harmed professionally;

      c.      Plaintiff's reputation was harmed;

      d.      economic damages; and

      e.      Plaintiff suffered economic damages related to any and all other consequential costs.

      WHEREFORE, Plaintiff Kraemer demands compensatory general damages against the Defendants, and each of them, in the amount proven at trial; compensatory special damages; costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; punitive damages against Defendant Beck; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

                                       JURY TRIAL DEMANDED

COUNT II:

PLAINTIFFS KRAEMER and RESCUE
v.
DEFENDANTS TOWNSHIP, BECK and MONACK

VIOLATION OF PLAINTIFFS' CONSTITUTIONAL RIGHTS,
SPECIFICALLY, 42 U.S.C. §1983 AND THE FOURTEENTH AMENDMENT
OF THE UNITED STATES CONSTITUTION

<u>EQUAL PROTECTION – CLASS OF ONE</u>

99.     Plaintiffs incorporate by reference Paragraphs 1 through 98 as though fully set forth at length herein.

100.    As more fully described hereinbefore above, Plaintiffs' trash was not removed from their property by Defendant Township's trash collection service on several occasions.

101.    Plaintiffs believe, and therefore aver, that Defendant Township and/or Defendant Beck did not instruct Defendant Township's garbage collection service to not collect similarly situated property owners and organizations' trash.  No rational basis exists for this difference in treatment.

102.    As more fully described hereinbefore above, Defendants Township and/or Monack denied the Plaintiffs a permit for approximately eight (8) months, required the Plaintiffs to obtain a structural engineer's report, and told the Plaintiffs that they were required to have their septic tank inspected.

103.    Plaintiffs believe, and therefore aver, that Defendants Township and/or Monack did not deny similarly situated property owners permits for eight (8) months, did not require similarly situated property owners to obtain structural engineer's reports for permits and did not require similarly situated business owners to have their septic tanks inspected.  No rational basis exists for this difference in treatment.

104.     As more fully described hereinbefore above, Plaintiffs finally received a permit from Defendants Township and/or Monack, however, Defendant placed certain conditions which no other property owners with permits were subjected to.  No rational basis exists for this difference in treatment.

105.     In his capacity as commissioner for Defendant Township, Defendant Beck acts as decision-maker for Defendant Township.

106.     As a direct and proximate result of the Defendants' actions, and each of them, Plaintiffs suffered the following injuries and damages:

   a.     Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution were violated;

   b.     Plaintiffs were harmed professionally;

   c.     economic damages; and

   d.     Plaintiffs suffered economic damages related to any and all other consequential costs.

WHEREFORE, Plaintiffs demand compensatory general damages against the Defendants, and each of them, jointly and severally, in the amount proven at trial; compensatory special damages; costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; punitive damages against the Defendant Beck; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT III:

PLAINTIFF RESCUE v. DEFENDANTS TOWNSHIP and BECK

VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS,
SPECIFICALLY, 42 U.S.C. §1983 AND THE FOURTEENTH AMENDMENT
OF THE UNITED STATES CONSTITUTION

<u>EQUAL PROTECTION – RACE</u>

107.    Plaintiffs incorporate by reference Paragraphs 1 through 106 as though fully set forth at length herein.

108.    Plaintiff Rescue provides service and therapy animals to veterans, including African-American veterans, and utilizes the help of volunteers, including African-American volunteers. Those African-American individuals are members of a protected class.

109.    Plaintiffs believe, and therefore aver, that Defendant Beck, in his capacity as commissioner for Defendant Township, took various actions against the Plaintiff, as more fully described hereinbefore above, on the basis of the race of Plaintiff Rescue's volunteers and veteran clients.

110.    As more fully described hereinbefore above, Defendant Beck made racially charged comments about Plaintiff Rescue's African-American volunteers.

111.    In his capacity as commissioner for Defendant Township, Defendant Beck acts as decision-maker for Defendant Township.

112.    As a direct and proximate result of the Defendants' actions, and each of them, Plaintiff Rescue suffered the following injuries and damages:

      a.    Plaintiff's right under the Fourteenth Amendment to the United States Constitution was violated;

      b.    Plaintiff was harmed professionally;

      c.    economic damages; and

      d.      Plaintiff suffered economic damages related to any and all other consequential costs.

WHEREFORE, Plaintiff Rescue demands compensatory general damages against the Defendants, and each of them, jointly and severally, in the amount proven at trial; compensatory special damages; costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; punitive damages against the individual Defendants; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT IV:

PLAINTIFF RESCUE v. DEFENDANTS TOWNSHIP AND BECK

VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS,
SPECIFICALLY, §1983 AND THE FIRST AMENDMENT
OF THE UNITED STATES CONSTITUTION

<u>RETALIATION – FREEDOM OF ASSOCIATION</u>

113.    Plaintiffs incorporate by reference Paragraphs 1 through 114 as though fully set forth at length herein.

114.    Plaintiff Rescue claims damages for the injuries set forth herein under 42 U.S.C. §1983 against the Defendants for violations of Plaintiff's constitutional rights under color of law.

115.    At all times relevant hereto, Plaintiff Rescue had the right to be free from retaliation based on its association with its owner and CEO, Plaintiff Kraemer.

116.    As described hereinbefore above, Plaintiffs believe, and therefore aver, that Defendant Beck took various actions against Plaintiff Rescue, in his capacity as commissioner for Defendant Township, based on Plaintiff Rescue's association with Plaintiff Kraemer.

117.    Defendant Beck's actions deprived Plaintiff Rescue of rights guaranteed to it by the First Amendment.

118.    In his capacity as commissioner for Defendant Township, Defendant Beck acts as a decision-maker for Defendant Township.

119.    As a direct and proximate result of the acts described hereinbefore above perpetrated by the Defendants, and each of them, Plaintiff suffered the following injuries and damages:

    a.    Plaintiff's right under the First Amendment to the United States Constitution to be free from retaliation speech was violated;

    b.    Plaintiff was harmed professionally;

    c.    Plaintiff's reputation was harmed;

    d.    economic damages; and

    e.    Plaintiff suffered economic damages related to any and all other consequential costs.

WHEREFORE, Plaintiff Rescue demands compensatory general damages against the Defendants, and each of them, jointly and severally, in the amount proven at trial; compensatory special damages; costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; punitive damages against the individual Defendants; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT V:

PLAINTIFF KRAEMER v. DEFENDANT BECK

VIOLATION OF PLAINTIFF'S
PENNSYLVANIA COMMON LAW RIGHTS

<u>DEFAMATION – SLANDER PER SE</u>

120.    Plaintiffs incorporate by reference Paragraphs 1 through 119 as though fully set forth at length herein.

121.    As more fully described hereinbefore above, Defendant Beck made statements to members of the community that Plaintiff Kraemer sold drugs and "ran a prostitution ring" at the Plaintiffs' property.

122.    Those statements, as more fully described hereinbefore above, were, and are, false, defamatory to Plaintiff Kraemer's character and placed Plaintiff Kraemer in a false light to members of her community.

123.    Those false and defamatory statements by Defendant Beck negatively affected Plaintiff Kraemer's reputation and career, placed her in a false light to members of her community and caused the Plaintiff extreme emotional distress.

124.    As a direct and proximate result of the actions of Defendant Beck, Plaintiff Kraemer was injured and damaged as follows:

       a.    Plaintiff suffered a violation of her Pennsylvania Common law rights;

       b.    Plaintiff was harmed professionally;

       c.    Plaintiff's reputation was harmed;

       d.    economic damages; and

       e.    Plaintiff suffered economic damages related to any and all other consequential costs.

WHEREFORE, Plaintiff Kraemer demands compensatory general damages against Defendant Beck, in the amount proven at trial; compensatory special damages; costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; punitive damages; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT VI:

PLANTIFFS v. DEFENDANTS BECK, NICK LNU and MONACK

VIOLATION OF PLAINTIFFS'
PENNSYLVANIA COMMON LAW RIGHTS

TRESPASS

125.    Plaintiffs incorporate by reference Paragraphs 1 through 124 as though fully set forth at length herein.

126.    As more fully described hereinbefore above, Defendants Beck, Nick LNU and Monack each individually entered the Plaintiffs' property without the Plaintiffs' consent and without any justification to do so.

127.    As a direct and proximate result of the acts described hereinbefore above perpetrated by the Defendants, and each of them, Plaintiffs suffered the following injuries and damages:

    a.      violation of the Plaintiffs' rights under Pennsylvania Common Law;

    b.      Plaintiff Kraemer suffered emotional distress;

    c.      economic damages related to any and all medical, legal, and/or other consequential costs; and

    d.      such other damages as may become apparent through the discovery process.

WHEREFORE, Plaintiffs demand compensatory general damages against the Defendants, and each of them, in the amount proven at trial; compensatory special damages including, but not limited to, costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; punitive damages against the Defendants, and each of them; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT VII:

PLAINTIFF KRAEMER v. DEFENDANT BARNES

VIOLATION OF PLAINTIFF'S
PENNSYLVANIA COMMON LAW RIGHTS

<u>DEFAMATION - SLANDER</u>

128.    Plaintiffs incorporate by reference Paragraphs 1 through 127 as though fully set forth at length herein.

129.    As more fully described hereinbefore above, Defendant Barnes intentionally made false and defamatory statements about Plaintiff Kraemer to a member of the community.

130.    The false and defamatory statements by Defendant Barnes negatively affected Plaintiff Kraemer's reputation and career, placed her in a false light to members of his community and caused the Plaintiff extreme emotional distress.

131.    As a direct and proximate result of the actions of Defendant Barnes, as set forth above, Plaintiff Kraemer was injured and damaged as follows:

      a.    Plaintiff suffered a violation of her Pennsylvania Common Law rights;

      b.    Plaintiff was harmed professionally;

      c.    Plaintiff's reputation was harmed;

21

    d.    economic damages; and

    e.    Plaintiff suffered economic damages related to any and all other consequential costs.

WHEREFORE, Plaintiff Kraemer demands compensatory general damages against the Defendant Barnes, in the amount proven at trial; compensatory special damages; costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; punitive damages against the individual Defendants; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT VIII:

PLAINTIFF KRAEMER
v.
DEFENDANTS FURGOTTEN, PALMER, CASSIDY, BARNES and COLE

VIOLATION OF PLAINTIFF'S
PENNSYLVANIA COMMON LAW RIGHTS

DEFAMATION - LIBEL

132.    Plaintiffs incorporate by reference Paragraphs 1 through 131 as though fully set forth at length herein.

133.    As more fully described hereinbefore above, Defendant Palmer, in her capacity as a humane officer for All But Furgotten, intentionally made false and defamatory statements in her text messages to various volunteers for Plaintiff Rescue.

134.    As more fully described hereinbefore above, Defendant Palmer was acting in her capacity as a humane officer for All But Furgotten.

135.    As more fully described hereinbefore above, Defendant Barnes, Cassidy and Cole created Facebook comments and posts which included false and defamatory statements about Plaintiff Kraemer.

136.    The false and defamatory statements and claims by Defendants Palmer, Barnes, Cassidy and Cole negatively affected Plaintiff Kramer's reputation and career, placed her in a false light to members of her community and caused Plaintiff Kramer extreme emotional distress.

137.    As a direct and proximate result of the actions of Defendants Palmer, Barnes, Cassidy and Cole, as set forth above, Plaintiff Kraemer was injured and damaged as follows:

   a.    Plaintiff suffered a violation of her Pennsylvania Common Law rights;

   b.    Plaintiff was harmed professionally;

   c.    Plaintiff's reputation was harmed;

   d.    economic damages; and

   e.    Plaintiff suffered economic damages related to any and all other consequential costs.

WHEREFORE, Plaintiff demands compensatory general damages against the Defendants, and each of them, jointly and severally, in the amount proven at trial; compensatory special damages; costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; punitive damages against the individual Defendants; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT IX:

PLAINTIFF KRAEMER v. DEFENDANT BARNES

VIOLATION OF PLAINTIFF'S
PENNSYLVANIA COMMON LAW RIGHTS

<u>DEFAMATION – LIBEL PER SE</u>

138.     Plaintiffs incorporate by reference Paragraphs 1 through 137 as though fully set forth at length herein.

139.     As more fully described hereinbefore above, Defendant Barnes intentionally made false and defamatory statements that Plaintiff Kraemer was a "hoarder" and destroyed Defendant Barnes' rental property.

140.     Those false and defamatory statements by Defendant Barnes negatively affected Plaintiff Kraemer's reputation and career, placed her in a false light to members of her community and caused Plaintiff Kraemer extreme emotional distress.

141.     The statements made by Defendant Barnes impute criminal liability on Plaintiff Kraemer.

142.     As a direct and proximate result of the actions of the Defendant Barnes, as set forth above, Plaintiff Kraemer was injured and damaged as follows:

    a.     Plaintiff suffered a violation of her Pennsylvania Common Law rights;

    b.     Plaintiff was harmed professionally;

    c.     Plaintiff's reputation was harmed;

    d.     economic damages; and

    e.     Plaintiff suffered economic damages related to any and all other consequential costs.

WHEREFORE, Plaintiff Kraemer demands compensatory general damages against the Defendant in the amount proven at trial; compensatory special damages; costs of suit; reasonable

attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; punitive

damages against the individual Defendants; and such other relief, including injunctive and/or

declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT X:

PLAINTIFFS KRAEMER and RESCUE<br>v.<br>DEFENDANTS WILLIAMS, CASSIDY BARNES and COLE

INTENTIONAL INTERFERENCE WITH A<br>BUSINESS RELATIONSHIP

143.    Plaintiffs incorporate by reference Paragraphs 1 through 142 as though fully set forth at

length herein.

144.    Plaintiffs have a business relationship with the fundraising website, Cuddly, which

Plaintiffs utilize to raise funds for various expenses.

145.    Following the fire, Plaintiff Kraemer posted a fundraiser for Plaintiff Rescue on Cuddly's

website.

146.    Defendants Williams, Barnes and Cole intentionally published false and negative

statements about about the Plaintiffs on Facebook and contacted Cuddly to make complaints

about the Plaintiffs, which has had a significant, negative effect on Plaintiffs' business

relationships with Cuddly, as more fully described hereinbefore above.

147.    Defendants were aware of the business relationship between Plaintiffs and Cuddly and

Defendant knew or should have known, that its aforementioned conduct would result in an

interference with Plaintiffs' business relationship with Cuddly.

148.    Interference with Plaintiffs' business relationship with Cuddly, as aforementioned, was a

foreseeable and certain result of the Defendants' conduct.

149.     As a direct and proximate result of the actions of the Defendants, and each of them, as set forth above, the Plaintiffs were injured and damaged as follows:

       a.      Plaintiffs suffered violations of their Pennsylvania Common Law rights;

       b.      Plaintiffs were harmed professionally;

       c.      Plaintiffs' reputations were harmed;

       d.      economic damages; and

       e.      Plaintiffs suffered economic damages related to any and all other consequential costs.

WHEREFORE, Plaintiffs demand compensatory general damages against the Defendants, and each of them, jointly and severally, in the amount proven at trial; compensatory special damages; costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; punitive damages against the individual Defendants; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

Respectfully submitted,

LAW OFFICES OF JOEL SANSONE

s/ Joel S. Sansone
Joel S. Sansone, Esquire
PA ID No. 41008
Massimo A. Terzigni, Esquire
PA ID No. 317165
Elizabeth A. Tuttle, Esquire
PA ID No. 322888
*Counsel for Plaintiffs*

Law Offices of Joel Sansone
Two Gateway Center, Suite 1290
603 Stanwix Street
Pittsburgh, Pennsylvania 15222
412.281.9194

Dated:  August 22, 2022