IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WENDI KRAEMER, et al.,                )
                                      )
            Plaintiffs,               )
                                      )   2:22-cv-01232
v.                                    )
                                      )
ROSTRAVER TOWNSHIP, et al,            )
                                      )
            Defendants.               )

## OPINION

**Mark R. Hornak, Chief United States District Judge**

Before the Court are two Motions to Dismiss: Defendants Andrea Palmer ("Palmer") and

All But Furgotten, Inc.'s ("ABF") Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) (ECF No. 21)

and Defendant Nic Pesante's[1] ("Pesante") Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) (ECF

No. 52). Because the Court concludes that it lacks subject matter jurisdiction as to the claims

against Palmer, ABF, and Pesante, the Court GRANTS Pesante's Motion (ECF No. 52) and

dismisses the claims against Pesante, and all claims against Palmer and ABF *sua sponte*, all such

dismissals being without prejudice for lack of jurisdiction. Palmer and ABF's 12(b)(6) motion

(ECF No. 21) is DISMISSED AS MOOT.

---

[1] Pesante was erroneously listed in the Complaint and therefore in the case caption as "Nick Lnu." (*See* ECF Nos. 1, 48.)

## I.    BACKGROUND

### a.  Factual Background[2]

The Defendants relevant to these Motions to Dismiss play minor roles in what otherwise appears to be a factually complicated dispute. As such, the Court recounts only those facts relevant to the disposition of the instant Motions.

Plaintiff Wendi Kraemer ("Kraemer") is the CEO of Plaintiff Angels Journey Home Rescue ("Rescue"), a non-profit corporation that works with veterans and provides them with service and therapy dogs. (ECF No. 1 ¶¶ 5, 6, 20.) Plaintiff Rescue is located at Kraemer's property in Belle Vernon, PA. (*Id.* ¶ 18.) Kraemer purchased that property in 2015, and "[v]arious members of the community have informed" Kramer that Defendant Gary Beck ("Beck")—who was, at all times relevant to the Complaint, a Commissioner of Defendant Rostraver Township ("Township")—wanted to purchase that property before Kraemer's offer was accepted. (*Id.* ¶¶ 8, 19.) In sum and substance, a feud with Beck appears to have ensued and Kraemer alleges that, as a result, members of the community—alongside Beck and Frank Monack ("Monack"), a zoning officer for the Defendant Township (*id.* ¶ 9)—have intentionally made it more difficult to run her rescue.

For instance, she alleges that "on several occasions throughout the years," including from approximately April through November 2021, "Defendant Township's garbage collection service refused to collect" trash from her property. (*Id.* ¶¶ 28–29.) Plaintiff also alleges that a band of community members—many of whom are defendants in this action but are otherwise not relevant here—posted defamatory statements about her online, alleging that she is a hoarder and calling the

---

[2] This statement of facts is based on the allegations set forth in Plaintiff's Complaint (ECF. No. 1), which the Court must generally accept as true for purposes of ruling on the pending Motions to Dismiss. *Blanyar v. Genova Prods., Inc.*, 861 F.3d 426, 431 (3d Cir. 2017) (12(b)(6) challenge); *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (facial 12(b)(1) challenge).

legitimacy of Plaintiff Rescue into question. (*See id.* ¶¶ 58–74.) As a result of these statements, Plaintiff's fundraising page on Cuddly.com was disabled, thereby impairing her ability to fundraise. (*Id.*¶ 74.)

Moreover, in the wake of a fire that damaged Kraemer's property, Plaintiff was allegedly given inaccurate information about permitting by Defendant Township officials (*id.* ¶ 76—78), was treated differently than other similarly situated individuals in that she was required to obtain a structural engineer's report (*id.* ¶¶ 77–78) and later had difficulty getting the necessary permits for construction (*id.* ¶¶ 80–84)—all allegedly in retaliation for her running feud with Beck.

The three Defendants who filed the instant Motions to Dismiss are allegedly involved as follows. After a fire on Plaintiff's property, the Rescue's animals needed temporary homes. (*Id.* ¶ 50) Several individuals volunteered to house the displaced animals. (*Id.*) Thereafter, Defendant Palmer, an employee of Defendant ABF, allegedly contacted several of those volunteers via text message and told them, in her capacity as a humane officer for ABF, not to return the animals to Kraemer and Plaintiff Rescue. (*Id.* ¶ 51.) Palmer also allegedly told several individuals that she wanted to "build a case" against Plaintiffs for not properly vetting their animals (*id.* ¶ 52) and described Kraemer as a "hoarder" (*id.* ¶ 53).

The allegations against Pesante are even more sparse. Shortly after the fire that damaged Kraemer's property was extinguished, Kraemer "witnessed [Pesante] trespassing in her residence and dumping trash inside the house." (*Id.* ¶ 43.) Kraemer "did not permit [Pesante] to be" on the property at the relevant time. (*Id.* ¶ 44.)

### b.  Procedural Background

On the basis of the allegations described above, Plaintiffs filed a Complaint alleging, as relevant here, one count of defamation (libel) against Palmer and ABF (*id.* ¶¶ 132–137) and one count of trespass against Pesante. (*Id.* ¶¶ 125–127.)

On November 17, 2022, Palmer and ABF filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), arguing that Plaintiffs failed to state a claim for defamation. (ECF No. 21.) On December 8, 2022, Plaintiffs filed a Response in Opposition (ECF No. 35). Defendants Palmer and ABF did not file a Reply or otherwise request an extension of time to do so. After reviewing the briefing, the Court *sua sponte* concluded that the propriety of its exercise of supplemental jurisdiction over the state law defamation (and sole) claim asserted against Defendants Palmer and ABF was at issue. The Court therefore ordered and received the submission of additional briefing on the issue of supplemental jurisdiction. (*See* ECF Nos. 49, 54, 55.) Thus, Palmer and ABF's 12(b)(6) motion is ripe for deposition.

On February 2, 2023, Pesante filed a Motion to Dismiss for Lack of Jurisdiction under Fed. R. Civ. P. 12(b)(1). (ECF No. 52.) On February 13, 2023, Plaintiffs filed a Response in Opposition. (ECF No. 56.) Pesante did not file a Reply or otherwise request an extension of time to do so. Thus, Pesante's 12(b)(1) Motion is ripe for disposition

## II.   LEGAL STANDARD

### a.  12(b)(6)

Generally, under Rule 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Detailed factual allegations are not required to survive a Rule 12(b)(6) motion, but "a formulaic recitation of the elements of a cause of action" is insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[M]ere

conclusory statements" similarly "do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *id.* at 555). Instead, the plaintiff's factual allegations must "raise a right to relief above the speculative level" and state a plausible claim for relief. *Twombly*, 550 U.S. at 555–56. In order to cross "the line between possibility and plausibility," the complaint must do more than "plead[] facts that are 'merely consistent with' a defendant's liability." *Iqbal*, 556 U.S. at 678 (quoting *id.* at 557). The Court should not dismiss a complaint, however, simply because it has provided an "imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

However, notwithstanding the plausibility of any claim Plaintiffs have made for relief, a federal court has the obligation to address a question of subject matter jurisdiction *sua sponte*. *Potter v. Cozen & O'Connor*, 46 F.4th 148, 155 (3d Cir. 2022) ("[A] court can and must raise jurisdictional issues *sua sponte*.")

### b. 12(b)(1)

"A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack, such as the one at issue here, challenges subject matter jurisdiction without disputing the complaint's factual allegations, [3] and requires the court to "consider the allegations of the complaint as true." *Id.* (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). In reviewing a facial attack, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Const. Party*

---

[3] A factual challenge attacks the factual allegations that undergird the complaint's assertion of jurisdiction, either through the filing of an answer or "otherwise present[ing] competing facts." *Davis*, 824 F.3d at 346 (quoting *Constitution Party of Pa. v. Achiele*, 757 F.3d 347, 358 (3d Cir. 2014)). When a factual challenge is raised, a court is permitted to "weigh and consider evidence outside the pleadings." *Id.* The plaintiff must carry the burden of proving that jurisdiction exists, and the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

*of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (quoting *In re Schering Plough Corp.*, 678 F.3d 235, 243 (3d Cir. 2012)). Thus, a facial 12(b)(1) attack requires a district court to apply the same standard of review it would use when considering a motion to dismiss under Rule 12(b)6)—that is construing the alleged facts in the light most favorable to the nonmoving party. *Id.*

## III.   DISCUSSION

At issue here is the propriety of this Court's exercise of supplemental jurisdiction[4] over purely state law claims—the only claims alleged against Palmer, ABF, and Pesante—under 28 U.S.C. § 1367, which confers "supplemental jurisdiction over all other claims that are so related to claims in the action within" a district court's "original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367.

As § 1367 has been interpreted by the courts, three requirements must be satisfied before a federal district court can exercise supplemental jurisdiction over a state law claim that, save for supplemental jurisdiction under § 1367, could not be heard in federal court. *See MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1102 (3d Cir. 1995) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). First, the federal claim must have substance sufficient to confer subject matter jurisdiction on the court. *Id.* Second, the state and federal claims must derive from a common nucleus of operative facts; and third, the claims must be such that they would ordinarily be expected to be tried in one judicial proceeding. *Id.* "Mere tangential overlap of facts

---

[4] The term "supplemental jurisdiction" has replaced the term "pendent-party" jurisdiction and is now used to describe both situations in which § 1367 confers jurisdiction over a related state law claim involving a party who is already in federal court and also situations in which § 1367 confers jurisdiction over claims involving a party who otherwise would not be in federal court. *See Exxon Mobil Corp v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005) ("The last sentence of § 1367(a) makes it clear that the grant of supplemental jurisdiction extends to claims involving joinder or intervention of additional parties."); *see, e.g. De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 307–08 (3d Cir. 2003) (1990 amendments to § 1367 "explicitly provided for supplemental jurisdiction for 'claims that involve the joinder or intervention of additional parties'"); *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 784 (3d Cir. 1995) ("Section 1367 also grants jurisdiction over claims that involve the joinder of intervention of additional parties, thereby codifying what had been dubbed 'pendent-party' jurisdiction.'").

is insufficient, but total congruity between the operative facts" of the two claims "is unnecessary." *Nanavati v. Burdette Tomlin Mem. Hosp.*, 857 F.2d 96, 105 (3d Cir. 1988).

No party to this case has disputed that the first requirement—the propriety of this Court's jurisdiction over the purportedly federal claims—is met in this case. Nor can the Court see any reason to do so; the federal claims are brought under 42 U.S.C. § 1983 for alleged violations of federal Constitutional rights on the part of representatives of Rostraver Township. Whether or not those claims prove to be meritorious, they "arise under" the laws of the United States and therefore this Court has subject matter jurisdiction over them. *See* 28 U.S.C. § 1331; *Kovalev v. Callahan Ward 12th St. LLC*, 548 F. Supp. 3d 498, 501 (E.D. Pa. 2021).

The touchstone Third Circuit case applying the second requirement for supplemental jurisdiction—that the state and federal claims have a common nucleus of operative facts—is *Lyon v. Whisman*, 45 F.3d 758 (3d Cir. 1995). In *Lyon*, the issue was whether an employee who asserted an FLSA claim for unpaid overtime could use supplemental jurisdiction to get breach of contract claims relating to an unpaid (or underpaid) bonus into federal court. *Id.* at 758–59. *Lyon* held that there was no common nucleus of operative facts between the state and federal claim because the only connection was the existence of an employment relationship, which was insufficient. *Id.* at 763–64. *See also Solomon v. Parente*, No. 21-cv-1750, 2022 WL 2953145, at *4 (W.D. Pa. July 26, 2022) (no common nucleus of operative facts between state domestic abuse allegations and alleged violation of the Equal Protection Clause because state officials did not act on complaints regarding the abuse underlying state claims).

Though *Lyon* does not address the "one proceeding" arm of *Gibbs*, *see* 45 F.3d at 760, *Lyon* directs district courts to analyze whether the same facts are necessary to prove both the federal and state claims—in other words, whether the federal and state claims are "merely

alternative theories of recovery based on the same acts." *Id.* at 761. For example, state assault claims in federal civil rights suits which allege police abuses are a common area in which supplemental jurisdiction exists. *Id; see also Crewl v. Port Auth. of Allegh. Cnty.*, No. 10-cv-567, 2010 WL 4181324, at * 4 (W.D. Pa. Oct. 20, 2010) (no supplemental jurisdiction over a state law intentional infliction of emotional distress claim against coworkers when federal claim was FMLA because "the theories of recovery invoked by Plaintiff are different and distinct [and t]he underlying facts needed to support the respective theories of recovery are completely different.").

### a.  Palmer and ABF

The sum and substance of Plaintiff's argument regarding the propriety of this Court's exercise of jurisdiction over the claims against all three Defendants at issue here is that certain constitutional violations alleged in Plaintiffs' Complaint stem from a fire that occurred on the Plaintiffs' property and the allegations against Palmer, ABF, and Pesante also stem from the above described fire and the Defendants' actions relating to the fire. (ECF No. 54, at 3; ECF No. 56, at 3.)

Under the test articulated in *Gibbs* and restated by the Third Circuit in *MCI Telecommunications*, this Court lacks subject matter jurisdiction to hear the state law defamation claims against Palmer and ABF. There is no common nucleus of operative fact with the claims alleged against the § 1983 defendants, and the two sets of clams would not ordinarily be tried in a single judicial proceeding.

The federal claims against the § 1983 Defendants Beck, Monack, and the Township are numerous, but a short summary is as follows. Kraemer alleges that Beck and the Township retaliated against her because of her exercise of her First Amendment rights in the form of filing complaints about Beck. (ECF No 1 ¶¶ 91–98.) Both Plaintiffs allege that Defendants Beck,

Monack, and the Township violated the Equal Protection Clause in that they treated Plaintiffs as a "class of one," treating Plaintiffs differently in the provision of Township services and performance of its official functions than it treated other, similarly situated individuals for no rational reason. (*Id.* ¶¶ 99–106.) Plaintiff Rescue further alleges that the Township and Beck violated the Equal Protection Clause in that they took actions against Plaintiff Rescue because it serves, associates with, and utilizes the help of African Americans. (*Id.* ¶¶ 107–112.) Finally, Plaintiff Rescue alleges that the Township and Beck violated the First Amendment in that they retaliated against the Rescue on the basis of its association with Kraemer. (*Id.* ¶¶ 113–19.)

As described above, the allegations against Defendants Palmer and ABF are essentially that—in Palmer's role as a humane officer for ABF—Palmer defamed Kraemer by instructing volunteers who had taken in the Rescue's animals after a fire on Kraemer's property not to return those animals to Kraemer and the Rescue; stating that she wanted to "build a case" against Kraemer and the rescue for not properly "vetting" their animals; and describing Kraemer as a "hoarder." (*Id.* ¶¶ 50–54; 132–137.)

Though there is a loose connection between the federal claims and the defamation claim against Palmer and ABF in that they involve, to some degree, the fire that occurred on Kraemer's property, animals generally, and Plaintiff Kraemer's work with Plaintiff Rescue, the connection falls short of a "common nucleus of operative fact." The essence of the claims against the Township and its officials is that those Defendants exercised their authority in an unlawful and arbitrary way on the basis of Plaintiffs' complaints about Beck, the association between Kraemer and Plaintiff Rescue, and the association between Plaintiff Rescue and African Americans. The overlap in facts here is much less than in either *Lyon*, where the basis of the state and federal claims was the same underlying employment relationship, or in *Solomon*, where the state law

9

claim involved allegations of domestic abuse and the federal claim pertained to state officials'
response to that very same abuse. Here, the facts underlying the two sets of claims are almost
entirely different, but merely share the background fact of involving Kraemer's work with
Plaintiff Rescue and the fire that occurred on her property.

The fact that Plaintiffs have not alleged that Defendants Palmer and ABF acted in concert
or conspiracy with the § 1983 defendants also detracts from their argument that supplemental
jurisdiction is appropriate here. *See Solomon*, 2022 WL 2953145, at *4 (noting that plaintiff did
"not allege[] that" defendants "acted in concert to inflict harm on her or to violate her civil
rights" but instead alleged that the defendants "engaged in independent wrongful conduct toward
[p]laintiff"). Moreover, here, as in *Solomon*, Plaintiffs have not cited to a single similar case in
which a court found that state law tort claims had a common nucleus of operative fact with a
federal civil rights claim alleged against separate individuals for different acts or omissions. *Id.*

Finally, these two sets of claims—the § 1983 claims against Beck, Monack, and the
Township and the state defamation claim against Palmer and ABF—are not such that one would
ordinarily expect them to be tried in one judicial proceeding. They are claims against different
individuals for claims involving only very loosely connected facts. Though, for reasons of
judicial economy, it might be more efficient to try the defamation claims alongside the § 1983
claims, § 1367 represents a limited grant of jurisdiction; it does not authorize this Court to
exercise jurisdiction over a state law claim merely because it would be convenient to try it along
with the federal claims. *See Exxon Mobil Corp.*, 545 U.S. at 552, 558 (2005) (district courts
possess "only that power authorized by Constitution and statute" and § 1367(a) grants
"supplemental jurisdiction over other claims *within the same case or controversy*, as long as the
action is one in which district courts would have original jurisdiction") (emphasis added).

Because the Court concludes that it has no jurisdiction to consider the state law defamation claim against Palmer and ABF, and that is the only claim in the Complaint that pertains to either of them, Count VIII is dismissed as to Palmer and ABF and both will be terminated as Defendants in this case. The Court does not separately consider the merits of Palmer and ABF's 12(b)(6) Motion.

### b. Pesante

The connection between the facts that concern Pesante and those that undergird the § 1983 claims is tenuous at best. The factual allegations pertaining to Pesante are simply that, after a fire on Kraemer's property, Pesante trespassed on that property and deposited trash there. (*See* ECF No. 1 ¶ 43.) Plaintiffs allege that the common nucleus of operative fact between the § 1983 claims and the trespassing claim against Pesante is the fire (*see* ECF No. 56, at 3). However, the fire has almost nothing to do with the § 1983 claims except that Plaintiffs also allege that the two Township officials implicated in the § 1983 claim *also* trespassed on her property after that fire and that, in the wake of that fire, the § 1983 defendants committed constitutional violations in the discharge of their official duties. (*See id.* ¶¶ 45–50. 75–89.) Again, Plaintiff does not assert that Pesante acted in concert with the Township officials to inflict the alleged harm on her. This is merely a "tangential overlap" in facts "insufficient" to confer supplemental jurisdiction under § 1367. *Nanavati*, 857 F.2d at 105.

Because the Court concludes that it has no jurisdiction to consider the state law trespass claim against Pesante, which is the only claim in the Complaint that pertains to him, Count VI is dismissed as to Pesante and Pesante will be terminated as a party in the case.

IV.     **CONCLUSION**

For the reasons set forth above, the Court concludes that it has no jurisdiction over the claims asserted against Palmer, ABF, and Pesante. The Court therefore GRANTS Pesante's Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) (ECF No. 52) and DISMISSES Count VI as to Pesante. The Court *sua sponte* DISMISSES Count VIII and as to Palmer and ABF. All such dismissals are without prejudice for lack of jurisdiction. Because the state law claims at issue here are the only ones that implicate Palmer, ABF, and Pesante, they shall be terminated as parties in the case. Palmer and ABF's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) (ECF No. 21) is DISMISSED AS MOOT.

_____
Mark R. Hornak
Chief United States District Judge

Dated:  February 24, 2023