IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WENDI KRAEMER, et al., | ) |
| Plaintiffs, | ) |
| | ) 2:22-cv-01232 |
| v. | ) |
| ROSTRAVER TOWNSHIP, et al, | ) |
| Defendants. | ) |

**OPINION**

**Mark R. Hornak, Chief United States District Judge**

Now pending before the Court and ripe for resolution is Defendants' Motion for Summary Judgment (ECF No. 88). For the reasons discussed below, the Court will grant Defendants' Motion for Summary Judgment. (ECF No. 88).

**I.    Background[1]**

**A.    Factual Background**

Wendi Kraemer moved to Adams Drive in Rostraver Township ("Township") in 2015. (ECF No. 89 ¶ 2; ECF No. 100 ¶ 2). In April of that same year, Ms. Kraemer incorporated Angels Journey Home Rescue. (ECF No. 89 ¶ 4; ECF No. 100 ¶¶ 4, 136). For the first few years of its existence, Angels Journey operated as an animal rescue and cat sanctuary, but more recently, it has expanded to providing goods and services to unhoused veterans. (ECF No. 89 ¶ 5; ECF No. 100 ¶ 5). Ms. Kraemer runs Angels Journey out of her home on Adams Drive. (ECF No. 89 ¶ 5; ECF No. 100 ¶ 5).

---

[1] The facts referenced in this section are undisputed unless otherwise noted.

Suffice it to say that Ms. Kraemer and her neighbors do not get along. One of Ms. Kraemer's neighbors is Gary Beck, a Commissioner of Rostraver Township. (ECF No. 89 ¶¶ 8-9; ECF No. 100 ¶¶ 8-9). As a Commissioner, Mr. Beck has served as chairman of the Board of Commissioners' Public Safety Committee, and since 2019, he has been in charge of streets and roads. (ECF No. 89 ¶ 12; ECF No. 100 ¶ 12). Mr. Beck has no role in permitting and zoning decisions.[2] (ECF No. 89 ¶ 11; ECF No. 100 ¶ 11). Because of his position as a Commissioner, Mr. Beck also acts as an informal receptacle for neighborhood complaints: if his neighbors have "a Township issue," they contact him. (ECF No. 89 ¶ 10; ECF No. 100 ¶ 10).

Another one of Ms. Kraemer's neighbors is Mary Sue Colborn. Ms. Colborn has been a clerical secretary for the Township for twenty-six years and serves as the secretary to the Township's Zoning Officer. (ECF No. 89 ¶ 17; ECF No. 100 ¶ 17). As part of her job with the Township, Ms. Colborn receives citizens' complaints and passes them along to the Zoning Officer, who then deals with them further. (ECF No. 89 ¶¶ 17-18; ECF No. 100 ¶¶ 17-18). From 2018 to present, Defendant Frank Monack has been the Township's zoning officer, code enforcement officer, and building code official. (ECF No. 89 ¶ 13; ECF No. 100 ¶ 13).

In her role as secretary, Ms. Colborn also hands out building-permit applications, receives payment, and distributes permits, but she has no role in deciding when or to whom a permit is issued: this is the responsibility of the Zoning Officer. (ECF No. 89 ¶ 19; ECF No. 100 ¶ 19). Though she doesn't live on the street now, Ms. Colburn has several personal connections to Adams

---

[2] Here, and elsewhere, Plaintiffs do not admit the factual allegations asserted by Defendants. Rather, Plaintiffs admit only that the witness "testified as stated," but they point to no evidence in the record that would counsel a contrary conclusion. (ECF No. 100 ¶ 11). Given that no basis is advanced for the Court to disregard that testimony, and it being the only evidence in the record on such points, the Court may and does treat it as undisputed for the consideration and disposition of the pending Motion. Fed. R. Civ. P. 56(e).

Drive: she grew up on the street; she currently owns a home on the road that she rents out; and her aunt and uncle live on the street. (ECF No. 89 ¶¶ 22-23; ECF No. 100 ¶¶ 22-23).

Not long after Ms. Kraemer moved to Adams Drive, tensions between Ms. Kraemer and her neighbors began to simmer. Beginning in 2016, Ms. Colborn began receiving complaints about Ms. Kraemer and the condition of her property. (ECF No. 89 ¶ 25; ECF No. 100 ¶ 25). Neighbors complained about:

- the amount of trash that Ms. Kraemer left by the street,
- the odor that came from the trash,
- Ms. Kraemer's practice of burning some of her garbage,
- structures that Ms. Kraemer erected on her property,
- the traffic that Ms. Kraemer's activities generated,
- the state of the property generally, and
- cats that neighbors believed to come from Ms. Kraemer's property.[3]

Some of these complaints came to Ms. Colborn through or from Mr. Beck. (Colborn Depo. 25, 58-60, 75, 97, ECF No. 89-5 at 8, 16, 20, 26). Some came directly from community members. (Colborn Depo. 24-25, 75, ECF No. 89-5 at 7, 20). Ms. Colborn also had complaints of her own. (ECF No. 89 ¶ 80; ECF No. 100 ¶ 80).

---

[3] In Plaintiffs' Counter Statement of Material Facts (ECF No. 100), Plaintiffs repeatedly state that certain community members did not have evidence that the cats belonged to Ms. Kraemer, nor did they have evidence that the cats originated from Ms. Kraemer's property. (*See, e.g.*, ECF No. 100 ¶¶ 27-28). This said, Plaintiffs never explicitly assert that (1) the cats aren't theirs or (2) the cats don't come from their property. In fact, in her deposition, Ms. Kraemer testified that, at least as of January 14, 2022, she had two cat sanctuaries on the property, that each sanctuary contained around a dozen cats, (Kraemer Depo., 11:25-13:11, ECF No. 89-2 at 5), and that many of her cats "went missing." (Kraemer Depo., 128:16-17, ECF No. 89-2 at 34). From Ms. Kraemer's own admissions, then, the record would reflect that she had 20+ cats, and many of them went unaccounted for and away from her property.

3

How Ms. Kraemer disposed of her trash was a particular point of contention. Defendants claim, supported by deposition testimony, that Ms. Kraemer would put out as many as thirty bags of garbage at one time.[4] (ECF No. 89 ¶ 30). According to Defendants, the contract between the Township and the Township's garbage collector ("Big's") limited the number of bags that Big's must collect at any given time.[5] (ECF No. 89 ¶ 30). Because Big's would not pick up all the garbage that Ms. Kraemer put out, sometimes the trash would sit by the curb and become increasingly odorous; sometimes Ms. Kraemer would burn the excess trash; and sometimes Ms. Kraemer would pay to have it hauled away. (ECF No. 89 ¶ 30; ECF No. 100 ¶¶ 30, 155; ECF No. 107 ¶ 155). This was more or less the state of things from 2016 until 2020.

In September 2020, Ms. Colborn drafted a petition regarding the state of Ms. Kraemer's property. (ECF No. 89 ¶¶ 80-82; ECF No. 100 ¶¶ 80-82). Ms. Colborn had complained to Mr. Monack on a number of occasions, and Monack suggested that a petition could be helpful if the matter ended up before a local state magistrate. (ECF No. 89 ¶¶ 80-81; ECF No. 100 ¶¶ 80-81).

---

[4] Here too, Plaintiffs do not admit the facts asserted by Defendants, but nor do they point to evidence in the record that would support a contrary conclusion. (ECF No. 100 ¶ 30). Their silence makes such assertions of fact undisputed for these purposes.

[5] Defendants' assertion is supported by the testimony of Ms. Colborn and Mr. Monack. Ms. Colborn testified, "And our garbage rules are, because I also do the garbage, you can put like two cans out and maybe four bags. There would be at least 30 bags out at one time. Our garbage collector says he refuses to pick that up. . . . And that he let Ms. Kraemer know that she can only put six bags out." (Colborn Depo. 32:18-24, ECF No. 89-5 at 9). And Mr. Monack testified, "They're [Big's is] only required to pick up so many bags under the old contract and they're not— the bags have to be less than 50 lbs." (Monack Depo. 23:14-16, ECF No. 89-4 at 7). Plaintiffs dispute that there was a six-bag limit. In support of their position, Plaintiffs cite an agreement between the Township and Big's that provides: "Contractor [i.e., Big's] shall pickup all refuse put out by residential customers." (ECF No. 100 ¶ 30; ECF No. 101-1 at 21). The Court notes that the agreement cited by Plaintiffs was executed on December 2, 2021 and was not effective until 2022. (ECF No. 101-1 at 18). Accordingly, the agreement provided by Plaintiffs is consistent with Mr. Monack's testimony that the "old contract" contained a six-bag limit, and does not create a factual dispute over whether there was a six-bag limitation on trash pick-up from 2016-2020.

Mr. Beck's role in creating the petition is disputed. Mr. Beck and Ms. Colborn testified at their depositions that Beck was not involved in creating the petition. (ECF No. 89 ¶¶ 82, 87). Ms. Kraemer testified that one of her neighbors—Jed Allen—told her that Mr. Beck was involved, that Beck told Allen about the petition, and that Beck wanted to get Kraemer "out of here." (Kraemer Depo. 57-60, ECF No. 89-2 at 16-17). Plaintiffs have not, however, placed into the record any deposition testimony or sworn statement by Allen himself.

Three other incidents form the basis of this lawsuit. First, in either July 2020 or July 2021, Ms. Kraemer organized a yard sale on her property to benefit Angels Journey and the people it serves. Ms. Kraemer was assisted by four volunteers who were Black. According to Plaintiffs, at one point during the sale, Mr. Beck was standing across the street from Ms. Kraemer's property, and said to Mr. Allen—at a volume loud enough to be overheard by Ms. Kraemer and one of her volunteers—"that bitch better learn her place and get these fucking n[****]rs out of here." (ECF No. 100 ¶¶ 145-46). Mr. Beck denies that he said this. (ECF No. 106-2 at 2; ECF No. 107 ¶¶ 145-46).

Second, between April and November 2021, Big's stopped picking up Ms. Kraemer's trash. (ECF No. 100 ¶ 153; ECF No. 101-1 at 14; ECF No. 107 ¶ 153).

And third, on January 14, 2022, there was a fire on Ms. Kraemer's property that caused severe damage. The affected portions of Ms. Kraemer's house had to be stripped to the studs. (ECF No. 89 ¶ 101; ECF No. 100 ¶ 101). After viewing the property and seeing damage to the roof, Mr. Monack—Rostraver's building code, zoning, and permitting official—told Ms. Kraemer that she would need to obtain a building permit to repair her home. (ECF No. 89 ¶ 116). Ms. Kraemer submitted her permit application on March 3, 2022. (ECF No. 89-4 at 52). Four days later, Mr. Monack requested additional information. (ECF No. 89-4 at 52). Among other things, Mr. Monack

requested a report from a licensed engineer about the structural soundness of the property and a report from the town's sewage inspection officer, which would be provided to Ms. Kraemer free of charge. (ECF No. 89-4 at 52). Through counsel, Ms. Kraemer exchanged a number of letters with Mr. Monack regarding the permitting process—specifically, the need for the engineer's report and the sewage inspection. (ECF No. 89-2 at 70-74).

On August 2, 2022, Ms. Kraemer's counsel sent an engineer's report—but still no sewage inspection—to Mr. Monack, and Monack issued a building permit the very next day. (ECF No. 89 ¶¶ 129-30; ECF No. 100 ¶¶ 129-30).

### B. Procedural Background

Ms. Kraemer and Angels Journey initiated the instant action on August 25, 2022. The Complaint, as filed, included ten counts against ten defendants. (ECF No. 1). On Defendants' motion at the outset of proceedings in this Court, the Court dismissed all claims, except those against Rostraver Township, Mr. Beck, and Mr. Monack. The case then proceeded to discovery. At the conclusion of discovery, the following claims remained:

(1) <u>Count I: First Amendment Retaliation (Speech)</u>:
   a. Ms. Kraemer v. Rostraver Township and Mr. Beck
   b. Mr. Beck allegedly told Big's not to pick up Plaintiffs' trash because Ms. Kraemer had reported Mr. Beck to the SPCA and the police for animal abuse.

(2) <u>Count II: Equal Protection Clause (Class of One)</u>:
   a. Ms. Kraemer and Angels Journey v. Rostraver Township, Mr. Beck, and Mr. Monack
   b. Mr. Beck and the Township allegedly instructed Big's not to collect Plaintiffs' trash but didn't instruct Big's not to pick up other people's trash.
   c. The Township and Mr. Monack delayed issuance of a building permit for eight months and required Ms. Kraemer to get an engineering report and septic inspection but didn't require similarly situated persons to do the same.

(3) <u>Count III: Equal Protection Clause (Race)</u>:
   a. Angels Journey v. Rostraver Township and Mr. Beck

  b. Mr. Beck and the Township allegedly retaliated against Angels Journey because of the race of Angels Journey's volunteers. The alleged retaliatory action was Beck's instruction to Big's telling them not to pick up Plaintiffs' garbage.

(4) <u>Count IV: First Amendment Retaliation (Association)</u>
  a. Angels Journey v. Township and Mr. Beck
  b. Angels Journey was harmed because of its association with Ms. Kraemer.

(5) <u>Count V: State-Law Slander Per Se:</u>
  a. Ms. Kraemer v. Mr. Beck
  b. Mr. Beck allegedly slandered Ms. Kraemer by saying that she sold drugs and ran a prostitution ring out of her house.

(6) <u>Count VI: State-Law Trespass:</u>
  a. Ms. Kraemer and Angels Journey v. Mr. Beck and Mr. Monack
  b. Mr. Beck and Mr. Monack allegedly entered onto Plaintiffs' property without their consent.

  Discovery on these counts concluded in February 2024. Defendants moved for summary judgment on the first four counts (each asserted under federal law) and asked the Court to decline to exercise supplemental jurisdiction over the remaining two state-law claims. In its Brief in Opposition to Summary Judgment, Plaintiffs "respectfully withdr[e]w" a number of their claims. (ECF No. 99 at 2-3). They "withdrew" Counts I, IV, V and VI against all defendants, and Count II against Mr. Beck.

  On November 25, 2024, the Court gave Plaintiffs an additional opportunity to file evidence in support of their allegation that Mr. Beck instructed Big's not to pick up Plaintiffs' garbage, given that Plaintiffs' arguments in those regards appeared to rest upon multiple layers of out-of-court statements without any obvious exclusions from or exceptions to the hearsay rule. The Court then extended the deadline for this filing once on Plaintiffs' motion and once on its own accord. On February 6, 2025, Plaintiffs' counsel submitted a supplement indicating that they were unable to obtain additional evidence.

On February 11, 2025, the Court held a telephonic status conference to discuss Plaintiffs' asserted withdrawal of certain claims. On the record during that conference, the Parties stipulated to the dismissal with prejudice of Count II as to Defendant Beck, and Counts I, IV, V, and VI as to all Defendants. Based on this stipulation, the Court dismissed those counts as to those Defendants.

As of the date of this Opinion, the only remaining claims are Count II as to Defendants Township and Monack and Count III as to Defendants Township and Beck. Defendants' Motion for Summary Judgment with respect to those counts is fully briefed and ripe for resolution.

## II.     Legal Standard

Pursuant to Federal Rule of Civil Procedure 56, the Court must enter summary judgment for the movant if she demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" if there is a "sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material if it might affect the outcome of the suit. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006).

In every case, the movant bears the initial responsibility for establishing that summary judgment is proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-movant bears the burden of proof at trial, the movant's initial burden can be met by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the movant has met their initial burden, the party resisting summary judgment may not rely "merely upon bare assertions, conclusory allegations or suspicions." *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Rather, they must go beyond their pleadings and point to specific facts in the record demonstrating that there is a genuine issue of

material fact. *Celotex*, 477 U.S. at 324. To prevent summary judgment on any given claim, the plaintiff must present evidence that, at a minimum, creates a genuine dispute of material fact with respect to every essential element of the cause of action. *See Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013).

In deciding whether to grant summary judgment, it is not the Court's role to weigh the evidence, to decide which evidence is more probative, or to make credibility determinations. *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). Rather, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If there is a conflict between the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### III.   Discussion

#### A.   Equal Protection Clause—Class of One (Count II)

To establish an equal protection violation under a "class of one" theory, the plaintiff must demonstrate that "she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In other words, the plaintiff must establish "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). The third prong imposes a heavy burden. The plaintiff must demonstrate that the differential treatment is "irrational and wholly arbitrary." *Eichenlaub v. Township of Indiana*, 285 F.3d 274, 287 (3d Cir. 2004) (quoting *Village of Willowbrook*, 528 U.S. at 564-65). A class-of-one claim will fail if "there is any reasonably conceivable state of facts that could provide a rational

9

basis" for the differential treatment. *Highway Materials, Inc. v. Whitemarsh Twp.*, 386 F. App'x 251, 259 (3d Cir. 2010) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)).

Plaintiffs say they were treated differently when Defendant Monack required them to provide a sewage inspection report before he would issue a building permit but did not require others to do the same.[6] Defendants argue that they are entitled to summary judgment because Plaintiffs have not identified other similarly situated property owners, because there is a rational basis for Monack's actions, and because Plaintiffs were not harmed by the allegedly differential treatment.

Ultimately, the Court need not resolve whether Plaintiffs have created a genuine factual dispute about the existence of similarly situated property owners nor whether Plaintiffs were harmed because Plaintiffs have not marshalled evidence from which a jury could reasonably find that Monack's actions were "irrational and wholly arbitrary." *Highway Materials*, 386 F. App'x at 259. Defendants assert that Monack requested a sewage inspection because he had been told by Colborn, who had at one point looked to purchase Kraemer's home, that the residence had no septic system or a very small one. (ECF No. 90 at 8; ECF No. 106 at 3-4). Given the amount of water that was sprayed into the house to put out the fire, Monack was concerned that such a system might have been inundated and no longer be functional. (ECF No. 90 at 8; ECF No. 106 at 3-4; ECF No. 106-1 ¶¶ 4-5). Defendants' argument is supported by Monack's deposition testimony, (Monack Depo. 77:7-17, ECF No. 89-4 at 21), and his affidavit, (ECF No. 106-1 ¶¶ 4-8).

---

[6] Plaintiffs' Complaint alleged a few other instances of disparate treatment, but their Brief in Opposition to Summary Judgment discusses only the sewage inspection. The Court will follow Plaintiffs' lead and limit its analysis to this one allegation of differential treatment that they rely on to oppose summary judgment.

In their Brief in Opposition, Plaintiffs offer no evidence—or even argument for that matter—to undermine or rebut Defendants' stated rationale. In their Counter Statement of Facts, Plaintiffs note that Monack testified that he could not verify Colborn's claims about Kraemer's septic system, (ECF No. 100 ¶ 172; Monack Depo. 87:10-25, ECF No. 89-4 at 23), but this is not enough to stave off summary judgment. Even if Monack were unable to verify Colborn's statement and even if Monack were unwise to rely on her unverified statement, this does not mean his actions were "irrational or wholly arbitrary." *Highway Materials*, 386 F. App'x at 259; *see Heller v. Doe*, 509 U.S. at 320 ("[R]ational-basis review in equal protection analysis is not a license for courts to judge the wisdom, fairness or logic of government activity."). Because Plaintiffs have not offered evidence to meet, let alone controvert, Defendants' plausible explanation for requiring a sewage inspection, Defendants are entitled to summary judgment. *See Madden v. Kentucky*, 309 U.S. 83, 88 (1940) (The plaintiff challenging state action must "negative every conceivable basis which might support it.").

Accordingly, the Court will grant Defendants' Motion for Summary Judgment with respect to Count II.

**B.    Equal Protection Clause—Race (Count III)**

To succeed on a race-based equal protection claim, a plaintiff must demonstrate that she was treated differently than similarly situated individuals, and that the reason for this disparate treatment was her membership in a protected class or her association with members of a protected class. *See Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1992); *Kasper v. Cnty. of Bucks*, 514 F. App'x 210, 214 n.3 (3d Cir. 2013); *see also Kengerski v. Harper*, 6 F.4th 531, 538-39 (3d Cir. 2021) (holding that associational discrimination claims were cognizable under Title VII). Plaintiff Angels Journey alleges that it was treated differently when Big's—at the direction

of Defendant Beck—stopped picking up the trash from Plaintiffs' property.[7] Angels Journey claims that Mr. Beck instructed Big's not to pick up its trash because of Angels Journey's relationship with its Black volunteers. Plaintiffs offer evidence that Mr. Beck used a racial slur in reference to Angels Journey's volunteers as proof of Beck's discriminatory intent.

Plaintiffs offer two pieces of evidence in an effort to prove that (or more precisely, to generate a genuine issue of material fact about whether) Mr. Beck instructed Big's not to collect Plaintiffs' trash.[8] Plaintiffs offer Ms. Kraemer's testimony that a Big's front-line trash-pickup employee—identified by Kraemer only as a "young black gentleman"—told her that Mr. Beck called Big's and told someone at Big's to stop picking up Plaintiffs' trash. Plaintiffs also submitted an affidavit from Diana Pandolph that they say corroborates Ms. Kraemer's account. (ECF No. 100 ¶ 154; Kraemer Depo. 26:19-27:15, ECF No. 89-2 at 9; Pandolph Affidavit ¶¶ 12-13, ECF No. 101-1 at 5).

Both pieces of evidence are out-of-court statements offered to prove the truth of the matters asserted in the statements, and neither can be considered here. At summary judgment, the Court may consider all evidence that can be reduced to admissible form at trial. *See* Fed. R. Civ. P. 56(e). The proponent of the evidence needs only to "explain the admissible form that is anticipated." *Fraternal Ord. of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016).

Generally, this means that the Court can consider hearsay statements if the declarant has been identified and there is no reason to doubt the declarant's availability. *Id.* at 239. Where the

---

[7] In the Complaint, Plaintiffs also alleged that Mr. Beck was involved in setting certain permitting requirements. (*See* ECF No. 1 ¶ 87). In their Brief in Opposition to Summary Judgment, Plaintiffs do not pursue these allegations and instead focus on only Mr. Beck's alleged instruction that Big's not remove Plaintiffs' trash. (*See* ECF No. 99 at 6-9).

[8] Although Count III is asserted on behalf of Plaintiff Angels Journey only, the Court will continue to use the plural "Plaintiffs" to be consistent with the rest of this Opinion.

declarant has not been identified, however, and the proponent has not explained how another hearsay exception or a definitional exclusion to the hearsay rule applies, the Court cannot conclude that the out-of-court statement can be reduced to admissible form for trial, and the Court should not consider these statements at summary judgment. *See Philbin v. Trans Union Corp.*, 101 F.3d 957, 961 n.1 (3d Cir. 1996).

Here, Plaintiffs argue that "Defendant Beck's statement is admissible at trial if Big's employee is available to testify." (ECF No. 99 at 9). True enough. But at this point, the Court cannot conclude that the Big's employee will be available to testify at trial. Plaintiffs have not been able to identify the declarant other than by a vague physical description. Observing this deficiency from the papers, the Court gave Plaintiffs two extra doses of time to build a record that would demonstrate that they could make those out-of-court statements admissible at trial. But Plaintiffs have not done so. At this point, all the Court has is Plaintiffs' speculation that, sometime before trial, they will identify the Big's front-line trash-pickup employee that they describe and be able to summon that person to the witness stand to testify. But that is not nearly enough for the Court to conclude that this employee will be available to testify at trial.[9]

Further, given that Plaintiffs have identified neither the front-line employee nor the Big's employee who received the instruction from Beck and then passed this information along to the front-line employee, the Court cannot conclude that this amalgam of out-of-court statements is otherwise excepted from the rule against hearsay, *see* Fed. R. Evid. 801(d)(2)(D), nor can the Court

---

[9] Plaintiffs' latest filing suggests that they will never be able to identify the Big's employee. After the Court gave Plaintiffs leave to supplement the record, Plaintiffs' counsel subpoenaed Big's seeking information about employees who serviced Rostraver Township between April and November 2021. Big's responded that it did not have records responsive to Plaintiffs' request. (ECF No. 114).

13

conclude any of these out-of-court declarants has personal knowledge sufficient to make them a competent witness, *see* Fed. R. Evid. 602.

Accordingly, the Court will not consider Ms. Kraemer's testimony or Ms. Pandolph's averments about the Big's employee's out-of-court statement which referenced an out-of-court statement supposedly made to him by the Big's employee who supposedly heard yet a third out-of-court statement by Beck.

Beyond these two pieces of proffered but inadmissible evidence, the record is bare of any evidence that would create an issue of fact as to whether Big's alleged failure to pick up Plaintiffs' trash had anything to do with the race of Angels Journey's volunteers at the direction of Beck or anyone else affiliated with the Township. While the Plaintiffs have advanced evidence of Beck's alleged racial bigotry in the form of Ms. Kraemer's testimony about Beck's statement about her organization's Black volunteers and Beck's alleged desire that she "get them out of here," missing from the record is evidence that would demonstrate a causal connection between Beck's statements and the Township contractor's alleged intentional failure to collect Ms. Kraemer's garbage. Accordingly, the Court will grant summary judgment for Defendants with respect to Count III.

## IV.    Conclusion

For the reasons discussed above, the Court will grant Defendants' Motion for Summary Judgment (ECF No. 88).

An appropriate Order will issue.

      s/ Mark R. Hornak  
      Mark R. Hornak  
      Chief United States District Judge

Dated: February 25, 2025